UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**KYLE-PIERCE LEE DUNCAN,**

      **Petitioner,**

**v.**                            **Case No. 8:20-cv-1111-MSS-LSG**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

      **Respondent.**

_____/

## O R D E R

Duncan petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state court convictions for trafficking amphetamine, possession of cannabis, possession of drug paraphernalia, aggravated fleeing and eluding law enforcement, driving with a suspended license, battery on a police canine, resisting arrest without violence, possession of a conveyance used for trafficking, and possession of MDMA. (Doc. 8) After reviewing the amended petition (Doc. 8), the response (Doc. 11), the reply (Doc. 12), and the relevant state court record (Doc. 11-2), the Court **DENIES** the amended petition.

## PROCEDURAL HISTORY

A jury found Duncan guilty of trafficking amphetamine, aggravated fleeing and eluding law enforcement, possession of MDMA, and other crimes (Doc. 11-2 at 700), and the trial judge sentenced Duncan to thirty years in prison. (Doc. 11-2 at 704–11) Duncan appealed (Doc. 11-2 at 713), and the state appellate court affirmed. (Doc. 11-2 at 763)

Duncan moved for post-conviction relief (Doc. 11-2 at 880–99), the post-conviction court denied relief (Doc. 11-2 at 902–05, 1031), Duncan appealed (Doc. 11-2 at 1034), and the state appellate court affirmed. (Doc. 11-2 at 1039) Duncan's federal petition follows.

## FACTS

Around 3:00 A.M. on March 18, 2016, a highway patrol trooper observed a black sports utility vehicle erratically travel away from a bar in Hillsborough County. (Doc. 11-2 at 235, 237) Duncan, who drove the SUV, ignored a stop sign and improperly turned into a left lane. (Doc. 11-2 at 237–38, 293–94, 355) After the trooper activated the emergency lights on his marked highway patrol car, Duncan refused to stop, ignored several traffic lights, and accelerated to one hundred miles an hour. (Doc. 11-2 at 235–36, 239–40, 353) Duncan drove the wrong way on a road and traveled on an interstate at one hundred forty miles an hour. (Doc. 11-2 at 240–43) Another deputy popped two of the SUV's tires with a spike strip. (Doc. 11-2 at 234–35) Duncan continued to drive on the deflated tires and lost control of the SUV near a retention pond in Polk County. (Doc. 11-2 at 245–47, 354)

Duncan exited the SUV wearing a backpack and swam into the pond. (Doc. 11-2 at 247, 354, 363) A deputy directed a police canine to swim into the pond, after Duncan refused to swim out of the pond. (Doc. 11-2 at 247–48, 364–65) After the police canine bit Duncan on his back, Duncan hit the police canine and held the police canine's head under water. (Doc. 11-2 at 248, 365, 369–70) The deputy threatened to shoot Duncan if Duncan did not release the police canine. (Doc. 11-2 at 365) After Duncan complied, the police canine bit Duncan again. (Doc. 11-2 at 365–66) The deputy entered the pond, retrieved the police canine, punched Duncan several times because Duncan refused to show his hands, and arrested Duncan. (Doc. 11-2 at 248, 365–66, 371–72)

2

Six plastic bags of methamphetamine, a measuring cup, and a scale were inside Duncan's backpack. (Doc. 11-2 at 249, 252–53, 258, 266–67, 473) Rubber bands, more small plastic bags, a briefcase, and a calendar were inside the SUV. (Doc. 11-2 at 253–54, 257) The calendar listed names of persons and amounts of money. (Doc. 11-2 at 258, 333–35) More methamphetamine, a quantity of marijuana, and Eight MDMA pills were inside a box attached to Duncan's belt. (Doc. 11-2 at 254–55, 258, 269, 306–07) Duncan smelled like alcohol and he stumbled when he walked, and his eyes were bloodshot and watery. (Doc. 11-2 at 279–80) Duncan refused a breath or blood test for alcohol and provided the trooper an incorrect name and birthdate. (Doc. 11-2 at 281–84, 299) At trial, the prosecutor introduced into evidence excerpts of a video of the police chase and of the search of Duncan's backpack. (Doc. 11-2 at 286–91, 471–72)

## STANDARDS OF REVIEW

### AEDPA

Because Duncan filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act, AEDPA governs his claims. *Lindh v. Murphy*, 521 U.S. 320, 327 (1997). AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the State
court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). A decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Clearly established federal law refers to a holding of an opinion by the U.S. Supreme Court at the time of the relevant state court decision. *Williams*, 529 U.S. at 412.

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

**Ineffective Assistance of Counsel**

Duncan asserts ineffective assistance of counsel — a difficult claim to sustain. *Strickland v. Washington*, 466 U.S. 668, 687 (1984), requires a defendant to demonstrate both deficient performance and prejudice:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To demonstrate prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. A defendant cannot meet his burden by showing that the avenue chosen by counsel was unsuccessful. *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992).

Because the standards under *Strickland* and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (citation omitted).

**Exhaustion and Procedural Default**

A petitioner must exhaust the remedies available in state court before a federal court can grant relief on habeas. 28 U.S.C. § 2254(b)(1)(A). The petitioner must (1) alert the state court to the federal nature of his claim and (2) give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard v. Connor*, 404 U.S. 270, 278 (1971). The state court must have the first opportunity to review and correct any alleged violation of a federal right. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

A federal court may stay — or dismiss without prejudice — a habeas case to allow a petitioner to return to state court to exhaust a claim. *Rhines v. Weber*, 544 U.S. 269 (2005); *Rose v. Lundy*, 455 U.S. 509 (1982). If the state court would deny the claim on a state procedural ground, the federal court denies the claim as procedurally defaulted. *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

Also, a petitioner's failure to comply with a state procedural rule governing the proper presentation of a claim bars review of that claim on federal habeas. *Coleman*, 501 U.S. at 729. "[A] state court's rejection of a federal constitutional claim on procedural

grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). A state court's procedural ruling rests on an independent and adequate state ground if (1) the last state court rendering a judgment in the case clearly and expressly relies on a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion," or in a "manifestly unfair" manner. *Judd*, 250 F.3d at 1313 (citing *Card v. Dugger*, 911 F.2d 1494, 1516–17 (11th Cir. 1990)).

To excuse a procedural default on federal habeas, a petitioner must demonstrate either (1) cause for the default and actual prejudice from the alleged violation of federal law or (2) a miscarriage of justice. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *House v. Bell*, 547 U.S. 518, 536–37 (2006).

## ANALYSIS

### Ground One

Duncan asserts that the trial court violated his federal rights by denying his motion for a mistrial after a trooper testified during the prosecutor's case that Duncan possessed "fifteen grams [of methamphetamine] short of a capital felony." (Doc. 8 at 5–7)

The Respondent argues that, because Duncan's claim is based on a violation of state law, the claim is not cognizable on federal habeas. (Doc. 11 at 8) 28 U.S.C. § 2254(a) (authorizing a district court to grant habeas relief "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States"). In his federal petition, Duncan asserts that the trial judge's ruling violated clearly established

federal law. (Doc. 8 at 7) A trial judge grants a motion for mistrial "only when 'an error is so prejudicial as to vitiate the entire trial, which is another way of saying that the motion should be granted only when necessary to ensure the defendant a fair trial.'" *Ward v. State*, 306 So. 3d 1004, 1007 (Fla. 3d DCA 2020) (quoting *Jennings v. State*, 124 So. 3d 257, 265 (Fla. 3d DCA 2013)). Because federal due process guarantees a defendant a fair trial, Duncan sufficiently asserts a federal claim in his *pro se* federal petition. *See In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process."). *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'") (citation omitted).

The Respondent asserts that the claim is procedurally barred because, in his brief on direct appeal in state court, Duncan failed to present the federal nature of his claim. (Doc. 11 at 9) In his brief, Duncan raised a claim similar to the claim that he raises in Ground One of his federal petition. (Doc. 11-2 at 738–46) However, Duncan cited only state court opinions and state rules of procedure, summarized the relevant standard that governs a mistrial under state law, argued that the trial court erred by failing to apply that standard based on state law, and argued that a curative instruction did not render any error harmless. (Doc. 11-2 at 738–46)

Because Duncan failed to present a federal claim to the state court "'such that the reasonable reader would understand [the] claim's particular legal basis and specific factual foundation,'" he failed to exhaust his remedies in state court. *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (quoting *Kelley v. Sec'y, Dep't Corrs.*, 377 F.3d 1317, 1344–45 (11th Cir. 2004)). *Lucas v. Sec'y, Dep't Corrs.*, 682 F.3d 1342, 1352 (11th Cir. 2012) ("'[T]o exhaust

state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'") (quoting *Jimenez v. Fla. Dep't Corrs.*, 481 F.3d 1337, 1342 (11th Cir. 2007)).

In his reply, Duncan argues that "[a]lthough he did not cite a federal source of law or a case deciding such a claim on federal grounds, the substance of the claim was well illustrated enough to apprise the state court of a constitutional violation." (Doc. 12 at 3–4) However, "a petitioner with a claim that could arise under either state or federal law must clearly indicate to the state courts that he intends to bring a federal claim." *Preston v. Sec'y, Fla. Dep't Corrs.*, 785 F.3d 449, 458 (11th Cir. 2015).

Even if Duncan exhausted his remedies in state court, the claim is meritless. After the trooper testified that that Duncan possessed "fifteen grams [of methamphetamine] short of a capital felony," trial counsel objected and moved for a mistrial as follows (Doc. 11-2 at 336–37):

| [Prosecutor:] | And aside from the items of drug paraphernalia, were there any narcotics recovered from Mr. Duncan? |
|---|---|
| [Trooper:] | There was. |
| [Prosecutor:] | What kind of narcotics were recovered from Mr. Duncan? |
| [Trooper:] | There was 385.5 grams of methamphetamine recovered, 2.4 grams of marijuana, and eight pills, or 3.8 grams of ecstasy, MDMA. |
| [Prosecutor:] | Three hundred eighty-five grams of methamphetamine, is that a substantial or considered — is that consistent with personal use? |
| [Trooper:] | No. No. Well, heck no. |

[Prosecutor:]        Okay. What is that consistent with?

[Trooper:]           Trafficking, manufacturing. It's fifteen grams short of a capital felony.

[Prosecutor:]        No further questions.

[Trial counsel:]     Objection, Your Honor.

[Trial judge:]       Approach.

(The following bench conference took place outside the hearing of the jury.)

[Trial judge:]       Okay. Defendant is present at sidebar with counsel.

[Trial counsel:]     Fifteen grams short of a capital felony, Your Honor.

[Trial judge:]       Mr. Nutter?

[Prosecutor:]        That's what I heard.

[Trial court:]       So [—]

[Prosecutor:]        Well, I guess the question is whether a curative is [warranted] or if that's grounds for an automatic mistrial. I'm just not sure what the case law says on that particular point. At this point, I would ask for a curative instruction that they disregard it and then —

[Trial counsel:]     Your Honor, we would ask for a mistrial.

[Trial judge:]       Have you consulted with your client about that? Because I would like you to.

[Trial counsel:]     We will.

[Trial judge:]       Okay.

[Prosecutor:]        At this point, Your Honor, I'll ask for a curative.

[Trial judge:]          Well, I know that's what you want. Do you have — assuming — I think it would be prudent to take a look at whether or not and to what extent this rises to the level of an automatic mistrial.

I know that there's lots of case law that says that some errant statement is, in and of itself or [in] a vacuum, not necessarily enough to justify a mistrial, but then depending on the nature of the statement and what's being referenced, it may be.

For example, a comment on the defendant's right to remain silent would pretty much be [ ] automatic; even though it's not automatic[.] [E]ven then, depending on who said it and what was said, even then it's not automatic. So, I'm just not sure.

And I think it would be prudent to let y'all do some research on that. So, I'm going to take the motion for mistrial under advisement until you can research that issue.

In the meantime, do you want me to give a curative instruction at this time? And if so, I'll do that, but keep the motion — if it ends up being a mistrial, it probably doesn't matter anyway. If it's not a mistrial, then maybe a curative instruction would be appropriate. . . .

[Prosecutor:]          Your Honor, we are quite well into the first day of trial, so I would ask that you just take the mistrial — motion for mistrial under advisement. The State will be done with its case in chief by five.

[Trial judge:]          I'm going to take it under advisement. I want to know if defense, if you want me to give a curative instruction. And I want

11

to give you a couple of minutes to discuss
that with your client before you commit.

After speaking with Duncan, trial counsel renewed his motion for a mistrial and asked for a curative instruction. (Doc. 11-2 at 342–45) Outside the presence of the jury, the trial judge admonished the trooper for testifying about a penalty of a crime and instructed the trooper to answer only the question asked by the examiner. (Doc. 11-2 at 345–47)

The trial judge instructed the jury to disregard the testimony by the trooper about the penalty as follows (Doc. 11-2 at 348):

| [Trial judge:] | Before we go on, ladies and gentlemen of the jury, I now instruct you to disregard the last answer to the last question that was asked for the last comment made by this particular officer. |
|---|---|
| | Is that sufficient for now, defense? |
| [Trial counsel:] | Yes, Your Honor. |
| [Trial judge:] | All right. Very good. State? |
| [Prosecutor:] | That's sufficient, Your Honor. |

The next day, the trial judge denied the motion for mistrial as follows (Doc. 11-2 at 445–51):

| [Trial judge:] | In looking at the cases, they fall into several categories. There are witness comments on a defendant's right to remain silent, sometimes a reference made during argument in that regard. There are references to other uncharged crimes the defendant may have committed; there's a category of cases on that. There's a category dealing with prior history, references to the defendant's prior history that are improper. There's one dealing with a prior trial where a mistrial had earlier occurred, there was a reversal on |
|---|---|

appeal, and the witness mentioned something that occurred during a prior trial.

And this is — there's a number of them out there, and, obviously, I only had time to pull a few of them. One is *Clark versus State*, 881 So. 2d 724, First District, 2004.

And let me say that this has been an area that evolved over time. I think at one time any comment on a defendant's right to remain silent was almost, *per se*, excludable and reversible. That resolved over time. Later, cases require a more in-depth analysis of the comment: When it was, the context, whether it was willful or inadvertent, evaluation of the strength of the case beyond that comment. And it evolved to the point that it isn't simply a point of is it prejudicial or what effect did the comment have on the jury; [ ] does it impact the fairness of the trial, and that's the standard.

[Trial counsel:]    Your Honor —

[Trial judge:]    This *Clark* case involved several comments — prejudicial remarks that were properly objected to. And not every inadvertent comment of the witness will result in a reversal.

[Trial counsel:]    Your Honor, if I may?

[Trial judge:]    Yeah.

[Trial counsel:]    The defense's position is that this comment was not inadvertent. It was intentional; not at all on Mr. Nutter. I'm not saying in any way, shape, or form that he had elicited or tried or wanted that to happen. I'm sure he feels the same way as everybody about the comment.

|  | But this morning, the officer did come in and approach the State and say, how did I do yesterday? I'm sorry. I thought — |
|---|---|
| [Prosecutor:] | Your Honor, I'm going to object to that. It's not in evidence. |
| [Trial counsel:] | We could call the officer in, if you wanted to hear from him, Your Honor. |
| [Trial judge:] | Well, the record speaks for itself. |
| [Trial counsel:] | We're trying to determine if it was intentional or not. If you want to call the officer in, is all I'm saying. |
| [Prosecutor:] | The case law generally deals with the State and if it was intentional[ ] or unintentional[ ]. |
| [Trial judge:] | In any case, where a witness says something they are not supposed to say, that's my understanding of how they are using the word, "inadvertent"[;] [it] may be improper. But let me go on. |

Not every inadvertent comment of a witness will result in a reversal. Nonetheless, the circumstances do mandate a reversal if it's highly inflammatory on two occasions. One involves a heated exchange between defense counsel and the witness. The judge failed to give a curative instruction. There was conflicting evidence regarding the defendant's guilt. Therefore, we are unable to say appellant received a fair trial, and we are constrained to find that the court abused its discretion or at the very, very least should have given a curative instruction.

With regard to the level of what kind of — this really deals with an improper comment during closing argument, but [—]

[Trial counsel:]      What case are you on, Your Honor?

[Trial judge:]        This is *Scott versus State*, Supreme Court, 66 So. 3d 923, from 2011. The granting of a motion for mistrial is not based on whether the error is prejudicial. Rather, the standard requires that a mistrial be granted only where an error is so prejudicial as to vitiate the entire trial — citing another Supreme Court case from 2006 — such that a mistrial is necessary to ensure that the defendant receives a fair trial.

It has long been established and continuously adhered to that the power to declare a mistrial and discharge the jury should be exercised with great care and caution, and it should be done only in cases of absolute necessity, quoting *England versus State*, 940 So. 2d 389, Florida, 2006. And this deals with improper prosecutor comment.

And it goes on, we conclude the isolated reference to Scott's unrelated drug charge was not so prejudicial as to vitiate the entire trial, citing to another Supreme Court case, *Jackson versus State*, 25 So. 3d 518, Florida, 2009, finding a witness's comment regarding the fact that a defendant always carried a gun, the mention of which was previously excluded by defense motion *in limine*, was improper but did not warrant a mistrial because defense counsel declined a curative instruction and the witness's gun reference was brief.

So, there was a brief reference made in this case. I have other cases as well, but I'm not going to belabor the point. There was a brief reference in this case. It related to a matter that — this is my analysis. It related to a matter that the defendant is

not charged with, and not — and not a collateral crime but simply a potential degree of what he is charged with, in an improper manner. It is a reference that may or may not be understood by a jury and would — as I said, it may or may not even be something an attorney would know without looking it up.

Let me look at some of the other factors here. We have a single isolated reference, not a repeated inquiry or repeated comments. The Court did give a curative instruction. In some cases, curative instructions are deemed to be insufficient, but it is a factor in this case that the Court did give a curative instruction.

Another factor in the case — in some of these cases is the strength of the case and whether or not the isolated comment is enough to violate the fairness of the proceeding.

In this case, in looking at the evidence, we have this video, we have the defendant [ ] by the testimony being recovered with a backpack full of illegal substances on his person. [By] way of counterevidence so far, there is some testimony regarding certain inconsistent statements contained in police reports, whether it was ten pills, eight pills, [ ] and so forth. But with regard to the chase, the video, the recovery of the truck, the evidence is essentially uncontroverted.

So, the question is: [Is] this single remark, in light of the evidence in this case as it now stands, sufficient to vitiate the entire fairness of the proceeding?

Obviously, it troubles all of us. But in the absence of any specific authority that says that this is some kind of *per se* reversible error or fundamental error, a comment of

this nature in light of all the other kind of comments dealing with a defendant's other charges, past history, comments on the right to remain silent, which are subject to the same analysis, and in light of the Supreme Court authority saying that a mistrial due to a comment, an isolated comment, should only be granted as [ ] almost a necessity, I'm hard-pressed to find that it rises to that level based on the case law I reviewed in my analysis [ ], so I'm going to deny the motion for mistrial at this time.

"In habeas corpus proceedings, federal courts generally do not review a state court's admission of evidence." *Sims v. Singletary*, 155 F.3d 1297, 1312 (11th Cir. 1998). "[A federal court] will not grant federal habeas corpus relief based on an evidentiary ruling unless the ruling affects the fundamental fairness of the trial." *Sims*, 155 F.3d at 1312. Also, "such trial court errors are subject to [ ] harmless error analysis and will not be the basis of federal habeas relief unless the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Sims*, 155 F.3d at 1312 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

Trial counsel timely objected to the trooper's testimony that Duncan possessed "fifteen grams [of methamphetamine] short of a capital felony," and the trial judge promptly instructed the jury to disregard the trooper's testimony. (Doc. 11-2 at 348) "The Supreme Court and [the court of appeals] have often held that [a judge] must presume that juries follow [ ] instructions to disregard specific remarks." *Hammond v. Hall*, 586 F.3d 1289, 1334 (11th Cir. 2009) (citation omitted). Because the prosecutor did not charge Duncan with a capital felony, the trooper did not inform the jury of the penalty that Duncan faced.

However, the trooper's comment informed the jury that the prosecutor charged Duncan with a serious crime.

Testimony, a video, and narcotics admitted into evidence at trial proved that Duncan wore a backpack that contained methamphetamine and kept a box on his belt that contained more methamphetamine, MDMA, and marijuana. (Doc. 11-2 at 249, 252–55, 258, 266–69, 306–07, 473) Also, the video proved that Duncan dangerously attempted to flee from police after the trooper activated the emergency lights on his marked highway patrol car. (Doc. 11-2 at 286–91, 471–72) Because a federal court presumes that a jury follows a curative instruction and because unconverted, compelling evidence at trial proved Duncan's guilt, the trooper's brief comment did not render Duncan's trial fundamentally unfair. *Hammond*, 586 F.3d at 1334. *Sims*, 155 F.3d at 1312. Also, because any error arising from the trooper's brief comment did not substantially and injuriously affect or influence the jury's verdict, error, if any, was harmless. *Sims*, 155 F.3d at 1312 (citing *Brecht*, 507 U.S. at 623). Consequently, the trial court did not unreasonably deny the claim.

Ground One is **DENIED**.

**Ground Two, Ground Three, and Ground Four**

In Ground Two, Duncan asserts that trial counsel deficiently performed by not moving for a judgment of acquittal on the charge of fleeing and eluding law enforcement because the prosecutor allegedly failed to prove that the crime occurred in Polk County. (Doc. 8 at 8–9) In Ground Three, Duncan asserts that trial counsel deficiently performed by not requesting a jury instruction on venue. (Doc. 8 at 10) In Ground Four, Duncan asserts that trial counsel deficiently performed by not objecting to the jury instruction for fleeing and eluding law enforcement. (Doc. 8 at 11–13)

The Respondent asserts that the claims are time barred. (Doc. 11 at 3–7, 10) A one-year statute of limitations applies to a federal petition challenging a state court judgment. 28 U.S.C. § 2244(d)(1). The limitation period begins to run "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

On May 11, 2018, the state appellate court affirmed Duncan's convictions and sentences in a decision without a written opinion (Doc. 11-2 at 763), the state supreme court lacked jurisdiction to review the unelaborated decision, and Duncan could have sought further review only in the United States Supreme Court. *Bates v. Sec'y, Dep't Corrs.*, 964 F.3d 1326, 1329 (11th Cir. 2020) (citing *Jackson v. State*, 926 So. 2d 1262, 1265 (Fla. 2006)). On May 25, 2018, Duncan placed in the hands of prison officials for mailing a *pro se* motion to discharge appellate counsel and for rehearing. (Doc. 11-2 at 765–69) On June 12, 2018, the state appellate court denied the timely filed motion for rehearing. (Doc. 11-2 at 772) Fla. R. App. P. 9.330(a)(1) ("A motion for rehearing, clarification, certification, or issuance of a written opinion may be filed within fifteen days of an order or decision of the court or within such other time set by the court.").

Duncan did not seek further review in the United States Supreme Court, and the time to seek further review expired ninety days after the state appellate court denied Duncan's motion for rehearing. Sup. Ct. R. 13(3). Consequently, on September 10, 2018, the limitation period started to run.

"[A] properly filed application for State post-conviction or other collateral review" tolls the limitation period. 28 U.S.C. § 2244(d)(2). Two hundred fifty-six days ran on the limitation period until May 24, 2019, when Duncan placed in the hands of prison officials for

mailing a motion to correct his sentence. (Doc. 11-2 at 776–81) The post-conviction court denied the motion (Doc. 11-2 at 799), Duncan appealed, and the state appellate court affirmed. (Doc. 11-2 at 818) The limitation period tolled until January 29, 2020, when the mandate issued on post-conviction appeal. (Doc. 11-2 at 820) *Nyland v. Moore*, 216 F.3d 1264, 1267 (11th Cir. 2000).

The limitation period started to run the next day and expired one hundred nine days later, on May 18, 2020.[1] On July 28, 2020, Duncan placed in the hands of prison officials for mailing a petition alleging ineffective assistance of appellate counsel. (Doc. 11-2 at 824–30) On February 26, 2021, Duncan placed in the hands of prison officials for mailing a motion for post-conviction relief. (Doc. 11-2 at 859–74) Because Duncan filed both the petition and the motion after the limitation period expired, neither tolled the limitation period. *Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004) ("[O]nce a deadline has expired, there is nothing left to toll. A state court filing after the federal habeas filing deadline does not revive it.").

On May 11, 2020, before the limitation period expired, Duncan placed in the hands of prison officials for mailing a federal petition. (Doc. 1) In this initial petition, Duncan asserted the following two claims:

> "The decision of the state court on Petitioner's direct appeal is an unreasonable application of state law based on federal constitutional issues and is a violation of the U.S. Constitution as established by the U.S. Supreme Court."

> (Doc. 1 at 6) (Ground One)

> "The decision of the state court on Petitioner's motion to correct an illegal sentence is an unreasonable application of state law based on federal constitutional issues and is a violation of the U.S. Constitution as established by the U.S. Supreme Court."

---

[1] One hundred nine days after January 29, 2020, is Sunday, May 17, 2020. Consequently, the limitation deadline rolled over to Monday, May 18, 2020. Fed. R. Civ. P. 6(a)(1)(C).

(Doc. 1 at 8) (Ground Two)

The Court dismissed the petition without prejudice and with leave to amend because the petition failed to allege facts in support of a claim. (Doc. 5) The Court warned Duncan that a one-year statute of limitations applied to a petition challenging a state court judgment and advised that a federal petition did not toll the limitation period. (Doc. 5 at 3 n.1) *See Duncan v. Walker*, 533 U.S. 167, 181–82 (2001). Duncan moved to stay this action while he further exhausted his remedies in state court. (Doc. 6) The Court granted Duncan's motion to stay and directed Duncan to move to re-open the case no later than thirty days after the state post-conviction proceedings concluded. (Doc. 7) On March 30, 2022, the mandate issued on Duncan's post-conviction appeal (Doc. 11-2 at 1041); therefore, the deadline for Duncan to move to re-open the case was April 29, 2022.

On March 22, 2022, over a year and a half after the limitation period expired[2], Duncan placed in the hands of prison officials for mailing an amended petition and asserted the following new ineffective assistance of counsel claims:

> "Whether trial counsel was ineffective for failing to move for a judgment of acquittal on the charge of fleeing or attempting to elude at high speed, as the State failed to establish that the crime happened in Polk County."

> (Doc. 8 at 8–9) (Ground Two)

> "Whether trial counsel was ineffective for failing to request a special jury instruction on venue."

> (Doc. 8 at 10) (Ground Three)

> "Whether trial counsel was ineffective for failing to object to confusing jury instructions on an essential element."

---

[2] The limitation period expired on May 18, 2020.

(Doc. 8 at 11–13) (Ground Four)

"Amendments made after the statute of limitations has run relate back to the date of the original pleading if the original and amended pleadings 'ar[i]se out of the conduct, transaction, or occurrence [set out — or attempted to be set out — in the original pleading].'" *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (quoting Fed. R. Civ. P. 15(c)[(1)(B)]). "[T]he untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings." *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000). "Instead, in order to relate back, the untimely claim must have arisen from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in 'both time and type.'" *Davenport*, 217 F.3d at 1344 (citation omitted).

Liberally construing the initial *pro se* federal petition, Duncan asserted that the state court violated his federal rights by affirming his convictions and sentences on direct appeal and by denying his motion to correct an illegal sentence.[3] (Doc. 1 at 6, 8) In Ground Two, Ground Three, and Ground Four of the amended federal petition, Duncan asserted

---

[3] In the initial petition, Duncan asserted the following two claims:

> "The decision of the state court on Petitioner's direct appeal is an unreasonable application of state law based on federal constitutional issues and is a violation of the U.S. Constitution as established by the U.S. Supreme Court."

> (Doc. 1 at 6) (Ground One)

> "The decision of the state court on Petitioner's motion to correct an illegal sentence is an unreasonable application of state law based on federal constitutional issues and is a violation of the U.S. Constitution as established by the U.S. Supreme Court."

> (Doc. 1 at 8) (Ground Two)

ineffective assistance of counsel claims. (Doc. 8 at 8–13) Because the ineffective assistance of counsel claims in Ground Two, Ground Three, and Ground Four in the amended federal petition do not relate back to any claim in the initial federal petition[4] and because Duncan first raised those ineffective assistance of counsel claims in the amended federal petition after the limitation period expired, the claims in Ground Two, Ground Three, and Ground Four are untimely.

Even if the claims are not untimely, Duncan failed to exhaust his remedies in state court. While this federal action was stayed, Duncan filed a motion for post-conviction relief. (Doc. 11-2 at 880–99) In the post-conviction motion, Duncan asserted the following claims:

> "Counsel provided ineffective assistance by failing to object to and control a key State witness from egregious and repeated inflammatory embellishments, elaborations, offers of other information, and misstatements of fact that would have otherwise resulted in a mistrial."

> (Doc. 11-2 at 883–90) (Claim One)

> "Counsel provided ineffective assistance for failing to preserve a sufficiency of the evidence claim for appeal by way of an adequate motion for judgment of acquittal as to Count One, [the charge for trafficking amphetamine]."

> (Doc. 11-2 at 890–94) (Claim Two)

> "Counsel provided ineffective assistance by failing to locate and interview a defense witness, Tina Israel-Webster."

> (Doc. 11-2 at 894–96) (Claim Three)

> "Counsel provided ineffective assistance by failing to raise the issue that the [trial] court's drug quantity was wrong."

---

[4] Duncan did not raise an ineffective assistance of counsel claim on direct appeal (Doc. 11-2 at 718–48) or assert an ineffective assistance of counsel claim in his motion to correct an illegal sentence. (Doc. 11-2 at 776–81) Consequently, the ineffective assistance of counsel claims in Ground Two, Ground Three, and Ground Four of the amended federal petition do not even arguably relate back to the claims in the initial federal petition.

(Doc. 11-2 at 896–97) (Claim Four)

"Counsel provided ineffective assistance by failing to raise the issue that the procedure used to impose an enhanced sentence was deficient."

(Doc. 11-2 at 897–98) (Claim Five)

"The cumulative effect of trial counsel's ineffective assistance stated herein warrant[s] relief."

(Doc. 11-2 at 898) (Claim Six)

Because Duncan did not assert the ineffective assistance of counsel claims related to the fleeing and eluding law enforcement charge and venue in Ground Two, Ground Three, and Ground Four of his federal petition, he failed to fairly present those claims to the state court. *McNair*, 416 F.3d at 1302. If Duncan returned to state court to exhaust the claims, the post-conviction court would deny the claims as untimely and successive. Fla. R. Crim. P. 3.850(b), (h). Consequently, the claims are both untimely and procedurally defaulted in federal court. *Snowden*, 135 F.3d at 736.

Because Duncan failed to demonstrate that cause and prejudice or a miscarriage of justice excused a procedural bar, the claims are procedurally barred from federal review. *Maples*, 565 U.S. at 280; *House*, 547 U.S. at 536–37. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *Holland v. Florida*, 560 U.S. 631, 645 (2010).

Ground Two, Ground Three, and Ground Four are **DISMISSED** as procedurally barred.

Accordingly, Duncan's amended petition (Doc. 8) is **DENIED** in part and **DISMISSED** in part. The Clerk is **DIRECTED** to enter a judgment against Duncan and to **CLOSE** this case.

## DENIAL OF CERTIFICATE OF APPEALABILITY AND
## LEAVE TO PROCEED *IN FORMA PAUPERIS*

Because Duncan neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE AND ORDERED** in Tampa, Florida on December 30, 2024.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE